IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF MICHIGAN

| | | |
|---|---|---|
| DOMINIQUE MACLIN-SHELTON | ) | |
| | ) | |
| PLAINTIFF, | ) | CIVIL ACTION NO. |
| | ) | |
| vs. | ) | |
| | ) | HON. |
| ANGEL'S PLACE, a nonprofit corporation | ) | |
| | ) | |
| DEFENDANT. | ) | |
| _____ | ) | |

## COMPLAINT

*There are no other matters pending between these parties.*

PLAINTIFF, DOMINIQUE MACLIN-SHELTON, by and through her attorneys, CARLA D. AIKENS, P.L.C., submits the following Complaint and Demand for Trial by Jury against ANGEL'S PLACE, a nonprofit corporation.

## JURY DEMAND

COMES NOW PLAINTIFF, and hereby makes her demand for trial by jury.

## JURISDICTION

1.     At all times relevant to this complaint, PLAINTIFF Dominique Maclin-Shelton ("Ms. Maclin-Shelton") was a resident of Macomb, County in the State of Michigan.

2.     Angel's Place is a domestic nonprofit corporation, which has a place

of business at 29299 Franklin Road, Southfield, Michigan 48034 and a resident agent address at 29299 Franklin Road Suite 2, Southfield, Michigan 48034.

3.     This action is brought in this Court on the basis of federal question jurisdiction, pursuant to Title VII of the Civil Rights Act of 1964, 42 USC 2000e et seq.

4.     Pursuant to 28 U.S.C. §1367, this Court has supplemental jurisdiction over Plaintiff's state law claims.

## VENUE

5.     Venue is proper in the Eastern District of Michigan pursuant to Section 706(f)(3) of Title VII, 42 U.S.C. § 2000e-5(f)(3), because the unlawful employment discrimination giving rise to Plaintiff's claims occurred in this District.

## STATEMENT OF FACTS

6.     At all times relevant to this Complaint, Ms. Maclin-Shelton was an over 40 year old woman.

7.     On or about November 29, 2021, Ms. Maclin-Shelton was hired as a direct care worker for Defendant.

8.     At all times relevant to this Complaint, Ms. Maclin-Shelton's supervisor was "Ashley," who was younger than Plaintiff, and the Human Resources Director was "Shelly."

9.     Upon information and belief, Ms. Maclin-Shelton performed her job well and showed improvement while working at Defendant.

10.     This is shown by Ms. Maclin-Shelton meeting all goals on a 60-day Work Improvement Plan starting on January 6, 2022, and ending on March 20, 2022.

11.     Approximately two weeks before she was terminated, Plaintiff complained about how Ashley was treating her and Plaintiff's older co-worker, "Renee C.," who was also over the age of 40, to Shelly.

12.     Plaintiff complained of how Ashley mistreated older employees such as Plaintiff and Renee C., generally giving them a hard time, yelling at her in front of others, ignoring them and then also being sarcastic when questions were asked, and constantly picking on them, compared to how other works were treated.

13.     In one particular incident, Plaintiff could not get in the door and she had to stand outside for five minutes even though Defendant's agents were aware that she was outside, and Ashley tried to embarrass her in front of her other co-workers, claiming she was late.

14.     Ashley would also comment in front of Plaintiff that Renee C. was too old and that Defendant needed to let her go.

15.     Ashley also spoke more harshly and treated African American female employees more severely than she did others who were not African American.

16.    Upon information and belief, Shelly informed Ashley of Plaintiff's complaints, and thereafter, Ashley began nitpicking with Plaintiff in an apparent effort to terminate her.

17.    A few weeks after complaining to Shelly, on or about August 8, 2022, Renee C. dropped medication for a child at Angel's Place.

18.    Renee C. contacted her and Ms. Maclin-Shelton's supervisor, Ashley, who instructed the duo to place the pill in a contaminated container and pull a pill from the end of the pack.

19.    In accordance with her job responsibilities and her supervisor's instructions, Ms. Maclin-Shelton placed the contaminated pill in a bag and gave the co-worker another pill from the end of the pack for the day.

20.    This action prevented a child from ingesting a potentially harmful, contaminated pill.

21.    Upon information and belief, Ms. Maclin-Shelton's job was simply to aid in the administration of medications and did not have the ability to deviate from the approved medication schedule.

22.    Upon information and belief, Ashley stated she would order a replacement pill the next day.

23.     At the end of her shift, on August 8, 2022, Ms. Maclin-Shelton signed off on the medication pass because the procedure and her supervisor's instructions were followed.

24.     Despite this, Ms. Maclin-Shelton was terminated on August 10, 2022, in accordance with this incident for "signing off" on a resident child's medication, allegedly when she should not have done so, and Ms. Maclin-Shelton never receiving her final paycheck from Defendant.

25.     Defendant further added that Ms. Maclin-Shelton left the pantry door open and unsupervised for a resident that was on food monitoring.

26.     However, Ms. Maclin-Shelton was not the one who left the door open, as she was in the laundry room at the time of the incident.

27.     Rather, it was Ms. Maclin-Shelton's coworker "Mike," a younger white male, who left the pantry door open, but he did not receive blame nor discipline for his actions, as Defendant forced blame onto Ms. Maclin-Shelton.

28.     Mike never had to work as hard as Plaintiff and other older workers did (including Renee C.) to perform their jobs for Defendant.

29.     Interestingly, Ms. Maclin-Shelton was later told she was fired for hitting a resident, two months after her August 10, 2022 termination date.

30.     Ms. Maclin-Shelton had been fired for over two months on the date of the alleged incident and after investigation by the state, the claims against Ms. Maclin-Shelton were found to be false and without merit.

31.     Upon information and belief, on or about August 10, 2022, Renee C. was also terminated by Defendant.

32.     Plaintiff filed a charge of discrimination and received a Right to Sue Letter on October 16, 2023 for Charge No: 471-2023-04341.

33.     Plaintiff requests remuneration for the following claims set forth herein.

## COUNT I
## RETALIATION IN VIOLATION OF 42 USC § 1981

34.     Plaintiff hereby incorporates by reference the preceding paragraphs of this Complaint, as if fully set forth herein.

35.     42 USC § 1981 prohibits individuals from intentionally discriminating and retaliating against persons who engage in protected activity, including reporting and opposing unlawful acts of race discrimination, in the making and enforcement of contracts.

36.     Defendant's discrimination against Plaintiff as described above is in violation of the rights of Plaintiff afforded her by the First Amendment and the

6

Civil Rights Act of 1866, 42 USC § 1981, as amended by the Civil Rights Act of 1991.

37.    By the conduct described above, Defendant intentionally deprived Plaintiff of the same rights as are enjoyed by individuals who do not report discrimination, and those who are non-female, non-African-American, to the creation, performance, enjoyment, and all benefits and privileges of their contractual employment relationship with Defendant, in violation of 42 USC § 1981.

38.    Plaintiff engaged in activity protected by 42 USC § 1981 when she complained of and opposed unlawful racial discrimination.

39.    The retaliation by Defendant that Plaintiff experienced included her termination, which broke the contract between the parties.

40.    The actions of Defendant and its agents were willful, intentional, in deliberate disregard of and with reckless indifference to the rights and sensibilities of Plaintiff.

41.    As a direct and proximate result of those actions, the terms, conditions, and privileges of Plaintiff's employment were adversely affected, and Plaintiff was unlawfully terminated.

42.     But for Defendant's unlawful discrimination against Plaintiff for opposing gender discrimination, Plaintiff would not have suffered damages as set forth herein including her termination.

43.     As a direct and proximate result of Defendant's wrongful acts, Plaintiff sustained injuries and damages including, but not limited to, loss of earnings and earning capacity, loss of career opportunities, loss of fringe and pension benefits, outrage and humiliation, mental anguish, anxiety about their future, physical and emotional distress, loss of professional reputation and loss of the ordinary pleasures of everyday life.

## COUNT II
## RACIAL DISCRIMINATION IN VIOLATION OF 42 USC § 1981

44.     Plaintiff hereby incorporates by reference the preceding paragraphs of this Complaint, as if fully set forth herein.

45.     42 USC § 1981 prohibits employers from intentionally discriminating against individuals, including employees, in the making and enforcement of contracts.

46.     Defendant's discrimination against Plaintiff as described above is in violation of the rights of Plaintiff afforded her by the U.S. Constitution and the Civil Rights Act of 1866, 42 USC § 1981, as amended by the Civil Rights Act of 1991.

47.     By the conduct described above, Defendant intentionally deprived Plaintiff of the same rights as are enjoyed by individuals who are non-African American, to the creation, performance, enjoyment, and all benefits and privileges of their contractual employment relationship with Defendant, in violation of 42 USC § 1981.

48.     The intentional discrimination on the basis of Plaintiff's race by Defendant that Plaintiff experienced included her termination, which broke the contract between the parties.

49.     The actions of Defendant and its agents were willful, intentional, in deliberate disregard of and with reckless indifference to the rights and sensibilities of Plaintiff.

50.     As a direct and proximate result of those actions, the terms, conditions, and privileges of Plaintiff's employment were adversely affected, and Plaintiff was unlawfully terminated.

51.     As a direct and proximate result of Defendant's wrongful acts, Plaintiff sustained injuries and damages including, but not limited to, loss of earnings and earning capacity, loss of career opportunities, loss of fringe and pension benefits, outrage and humiliation, mental anguish, anxiety about their future, physical and emotional distress, loss of professional reputation and loss of the ordinary pleasures of everyday life.

## <u>COUNT III</u>
## RETALIATION IN VIOLATION OF TITLE VII

52.    Plaintiff incorporates by reference all allegations in the preceding paragraphs.

53.    At all material times, Defendant was an employer and Plaintiff was an employee covered by, and within the meaning of, Title VII, as amended.

54.    A respondeat superior relationship existed because agents of Defendant had the ability to undertake or recommend tangible decisions affecting Plaintiff and the authority to direct all of Plaintiff's daily work activity.

55.    Defendant's conduct, as alleged herein, violated Title VII which makes it unlawful to harass or retaliate against an employee for engaging in protected activity.

56.    Plaintiff engaged in protected activity, as more fully laid out in the statement of facts, including, but not limited to when Plaintiff attempted to report the behavior she experienced and when she was later accused of hitting a child two months after she was terminated.

57.    Defendant, through its agents, had knowledge that Plaintiff engaged in protected behavior because she reported the issue directly to an agent of Defendant.

58.     After Plaintiff engaged in protected activity, Defendant's agents thereafter took adverse employment actions against Plaintiff, as alleged in the statement of facts, and terminated her position.

59.     Defendant and its agents' unlawful actions were intentional, willful, malicious and/or done with reckless disregard of Plaintiff's rights.

60.     Plaintiff notified Defendant and its agents of the unwelcomed conduct and communication; however, Defendant failed to remedy the same.

61.     As a proximate result of Defendant's discriminatory and retaliatory actions, Plaintiff has suffered losses in compensation, earning capacity, humiliation, mental anguish, and emotional distress.

62.     As a result of those actions and consequent harms, Plaintiff has suffered such damages in an amount to be proved at trial.

63.     Plaintiff requests relief as described in the Prayer for Relief below.

## COUNT IV
## RETALIATION IN VIOLATION OF THE ELCRA

64.     Plaintiff incorporates by reference all allegations in the preceding paragraphs.

65.     At all material times, Plaintiff was an employee, and Defendant was her employer covered by, and within the meaning of, the ELCRA.

66.    A respondeat superior relationship existed because agents of Defendant had the ability to undertake or recommend tangible decisions affecting Plaintiff and the authority to direct all of Plaintiff's daily work activity.

67.    Defendant's conduct, as alleged herein, violated the ELCRA which makes it unlawful to retaliate against an employee who has engaged in protected activity.

68.    Plaintiff engaged in protected activity, as more fully laid out in the statement of facts, including but not limited to when Plaintiff attempted to report the behavior she experienced and when she was later accused of hitting a child two months after she was terminated.

69.    Defendant, through its agents, had knowledge that Plaintiff engaged in protected behavior because she reported the issue directly to an agent of Defendant as well as should have recognized Plaintiff could not have committed the alleged assault.

70.    After Plaintiff engaged in protected activity, Defendant's agents thereafter took adverse employment actions against Plaintiff, as alleged in the statement of facts, which included terminating her.

71.    Defendant and its agents' unlawful actions were intentional, willful, malicious and/or done with reckless disregard of Plaintiff's rights.

72.    Plaintiff notified Defendant and its agents of the unwelcomed conduct

and communication; however, Defendant failed to remedy the same.

73.     As a proximate result of Defendant's discriminatory and retaliatory actions, Plaintiff has suffered losses in compensation, earning capacity, humiliation, mental anguish, and emotional distress.

74.     As a result of those actions and consequent harms, Plaintiff has suffered such damages in an amount to be proved at trial.

75.     Plaintiff requests relief as described in the Prayer for Relief below.

## COUNT V
## DISCRIMINATION ON THE BASIS OF RACE IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. 2000e et seq. ("Title VII")

76.     Plaintiff incorporates by reference all allegations in the preceding paragraphs.

77.     At all material times, Defendant was an employer and Plaintiff was an employee covered by, and within the meaning of, Title VII, as amended.

78.     Defendant's conduct, as alleged herein, violated Title VII of the Civil Rights Act of 1964, which makes it unlawful to harass or discriminate against an employee on the basis of that employee's race.

79.     Plaintiff is an African American woman, and, as a result, is a member of a protected class pursuant to Title VII.

80.     Plaintiff was subjected to offensive communication and/or conduct on the basis of her membership in this protected class, including but not limited to, working her more severely, speaking to her more harshly, and culminating in her termination, as described in the facts above.

81.     Defendant and its agents had a habit of terminating African American employees for made up or minor reasons, as compared to their non-African American counterparts.

82.     Defendant and its agents' unlawful actions were intentional, willful, malicious and/or done with reckless disregard for Plaintiff's rights.

83.     The unwelcomed conduct and communication was intended to and in fact did substantially interfere with Plaintiff's employment and created an intimidating, hostile, and/or offensive work environment as alleged in the statement of facts.

84.     As a proximate result of the Defendant's discriminatory actions, Plaintiff has suffered losses in compensation, earning capacity, humiliation, mental anguish, and emotional distress.

85.     As a result of those actions and consequent harms, Plaintiff has suffered such damages in an amount to be proven at trial.

86.     Plaintiff requests relief as described in the Prayer for Relief below.

14

**COUNT VI**
**HARASSMENT AND DISCRIMINATION ON THE BASIS OF RACE IN**
**VIOLATION OF THE MICHIGAN ELLIOTT-LARSEN CIVIL RIGHTS**
**ACT, MCL 37.2101 et seq. ("ELCRA")**

87.    Plaintiff incorporates by reference all allegations in the preceding paragraphs.

88.    At all material times, Defendant was an employer and Plaintiff was an employee covered by, and within the meaning of, ELCRA.

89.    Defendant's conduct, as alleged herein, violated the ELCRA, which makes it unlawful to harass or discriminate against an employee on the basis of that employee's race or skin color.

90.    Plaintiff is an African American woman, and, as a result, is a member of a protected class pursuant to ELCRA.

91.    Plaintiff was subjected to offensive communication and/or conduct on the basis of her membership in this protected class, including but not limited to, working her more severely, speaking to her more harshly, and culminating in her termination, as described in the facts above.

92.    Defendant and its agents had a habit of terminating African American employees for made up or minor reasons, as compared to their non-African American counterparts.

93.     Defendant and its agents' unlawful actions were intentional, willful, malicious and/or done with reckless disregard for Plaintiff's rights.

94.     The unwelcomed conduct and communication was intended to and in fact did substantially interfere with Plaintiff's employment and created an intimidating, hostile, and/or offensive work environment as alleged in the statement of facts.

95.     As a direct and proximate result of the Defendant's wrongful acts and omissions, Plaintiffs have sustained loss of earnings, earning capacity, and fringe benefits and have suffered mental anguish, emotional distress, humiliation and embarrassment, and loss of professional reputation.

96.     Plaintiff requests relief as described in the Prayer for Relief below

## COUNT VII
## DISCRIMINATION ON THE BASIS OF AGE IN VIOLATION THE AGE DISCRIMINATION IN EMPLOYMENT ACT OF 1967 ("ADEA")

97.     Plaintiff incorporates by reference all allegations in the preceding paragraphs.

98.     At all material times, Plaintiff was an employee, and Defendant her employer covered by, and within the meaning of the ADEA.

99.     A respondeat superior relationship existed because Plaintiff's supervisors had the ability to undertake or recommend tangible decisions affecting

Plaintiff and the authority to direct her daily work activities, as alleged in the statement of facts.

100.   Defendant's conduct, as alleged herein, violated the ADEA, which makes it unlawful to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age."

101.   Plaintiff was born in 1974 and, and as a result, is a member of a protected class for the purposes of the ADEA.

102.   Plaintiff and other older workers were being systematically targeted and terminated, as compared to their younger co-workers, and as stated herein.

103.   As a direct and proximate result of the Defendant's wrongful acts and omissions, Plaintiff has sustained loss of earnings, earning capacity, and fringe benefits and has suffered mental anguish, emotional distress, humiliation and embarrassment, and loss of professional reputation.

104.   As a result of those actions and consequent harms, Plaintiff has suffered such damages in an amount to be proven at trial.

105.   Plaintiff requests relief as described in the Prayer for Relief below.

## <u>COUNT VIII</u>
## HARASSMENT AND DISCRIMINATION ON THE BASIS OF AGE IN VIOLATION OF THE ELLIOT-LARSEN CIVIL RIGHTS ACT, MCL 37.2101, et seq. ("ELCRA")

106.  Plaintiff incorporates by reference all allegations in the preceding paragraphs.

107.  At all material times, Plaintiff was an employee, and Defendant her employer covered by, and within the meaning of the ELCRA.

108.  A respondeat superior relationship existed because Agents of Defendant Employer had the ability to undertake or recommend tangible decisions affecting Plaintiff and the authority to direct Plaintiff's daily work activity, as alleged in the statement of facts.

109.  Defendants Employer's conduct, as alleged in the statement of facts, violated the ELCRA, which makes it unlawful to harass and/or discriminate against an employee on the basis of their age.

110.  As alleged in the statement of facts, Plaintiff would consistently receive harassment or differential treatment on the basis of her age.

111.  Plaintiff was forty-nine years-old at the time of her termination meaning she is within the protected class as the ELCRA does not limit age discrimination to the elderly class, but instead, makes all age discrimination illegal, and as a result, Plaintiff is a member of a protected class.

18

112.   Plaintiff was talked down to, belittled, failed to be promoted, treated with much more hostility than any of her co-workers specifically because of her age, and other such conduct as alleged herein, eventually terminating her.

113.   As a direct and proximate result of the Defendants' agents' wrongful acts and omissions, Plaintiff has sustained loss of earnings, earning capacity, and fringe benefits and has suffered mental anguish, emotional distress, humiliation and embarrassment, and loss of professional reputation.

114.   As a result of those actions and consequent harms, Plaintiff has suffered such damages in an amount to be proven at trial.

115.   Plaintiff requests relief as described in the Prayer for Relief below.

## **PRAYER FOR RELIEF**

PLAINTIFF, Dominique Maclin-Shelton, respectfully requests that this Honorable Court enter judgment against Defendant as follows:

1. Compensatory damages in whatever amount to which Plaintiff is entitled;

2. Exemplary damages in whatever amount which Plaintiff is entitled;

3. An award of lost wages and the value of fringe benefits, past and future;

4. An award of interest, costs, and reasonable attorney fees; and

5. An order awarding whatever other equitable relief appears appropriate at the time of final judgment.

Dated:                                                  Respectfully Submitted,

                                             CARLA D. AIKENS, P.L.C.

                                             /s/ *Carla D. Aikens*
                                             Carla D. Aikens (P69530)
                                             Rejanae Thurman (P85701)
                                             615 Griswold St., Ste. 709
                                             Detroit, MI 48226
                                             carla@aikenslawfirm.com
                                             *Attorneys for Plaintiff*